ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| PUEBLO DE PUERTO RICO Parte Apelada | | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón |
| v. | KLAN202400484 | Civil Núm. D EC2021G0013 |
| JOSUÉ F. BERRÍOS CÓRDOVA Parte Apelante | | Sobre: Art. 127-A C.P. |

Panel integrado por su presidenta, la Juez Ortiz Flores, el Juez Rivera Torres y el Juez Campos Pérez

Ortiz Flores, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de abril de 2026.

Comparece ante nos el señor Josué Felipe Berríos Córdova mediante recurso de *Apelación* y nos solicita la revisión de una *Sentencia* emitida el 15 de abril de 2024 por el Tribunal de Primera Instancia, Sala Superior de Bayamón. Mediante el referido dictamen, el foro primario declaró la culpabilidad del apelante por el delito de maltrato a personas de edad avanzada.

Por los fundamentos que expondremos, se **confirma** la *Sentencia* apelada.

I.

Por hechos acaecidos el 26 de mayo de 2021, se presentó una *Denuncia*[1] contra el señor Josué Felipe Berríos Córdova (parte apelante) por infracción al Artículo 127-A del Código Penal de Puerto Rico, 33 LPRA sec. 5186a, sobre maltrato a personas de edad avanzada. Tras varios trámites procesales, el 19 de julio de 2021, el Ministerio Público (parte apelada) presentó acusación y expuso los hechos ocurridos como sigue:

> Cometido en Bayamón, PR 26 DE MAYO DE 2021 A ESO DE LAS 2:30 PM de la siguiente manera:

---

[1] Véase los autos originales en el caso con Alfanumérico KLAN202400484.

Número Identificador

SEN2026_____

> El referido acusado, [JOSUÉ] F. BERRÍOS [CÓROVA]; [allá] en o para el día 26 de mayo de 2021 a eso de las 2:30 [p.m.] y en la Urb. San Souci [,] [Calle] 18 CC-1, [Bayamón], Puerto Rico, que forma parte de la [jurisdicción] del Tribunal de Primera instancia sala de Bayamón, ilegal, voluntaria, a sabiendas y criminalmente empleó [maltrato] [físico] contra el Sr. Felipe Berríos Chévere de 81 años de edad, el cual es una persona de edad avanzada, consistente en que el aquí imputado lo agredió en el [área] del rostro, lo empujo, dándose con la pared de cemento y le manifestó que esta noche se iba a poner bueno, temiendo el perjudicado por tales hechos. [2]

El juicio en su fondo se celebró los días 16 y 23 de noviembre de 2021, y el 13 de diciembre de 2021. Como prueba de cargo, el Ministerio Público presentó el testimonio del señor Felipe Berríos Chévere y del agente Javier Antonio Salgado Santiago. Según surge de la *Minuta*,[3] se admitieron como evidencia presentada por el Ministerio Público los siguientes documentos: (i) Exhibit 1 – Documento de las Advertencias Miranda y, (ii) Exhibit 2 – Informe de Alta del Hospital Pavía.

**Testimonio de Felipe Berríos Chévere**

El señor Berríos Chévere, como perjudicado y padre del señor Berríos Córdova, identificó y señaló al apelante en sala. Declaró que el 26 de mayo de 2021, fue agredido por el señor Berríos Córdova en su casa. Explicó que se encontraba solo en la marquesina de su casa, luego entró el apelante a pedirle dinero. Manifestó que le dijo al señor Berríos Córdova que no tenía dinero y luego este le dio un golpe, un puño hacia el lado izquierdo de su cara. Explicó que el puño fue bastante duro, ya que llegó a raspar su nariz. Añadió que tras el golpe se fue de lado, y luego de esto el apelante se fue y su compañera llamó a la policía porque vio que este estaba herido. Testificó que, tras la llamada, llegó un agente de la policía y tomó la información.

**Testimonio de Agente Javier Antonio Salgado Santiago**

El agente Salgado Santiago testificó que respondió a una intervención relacionada con una alegada agresión ocurrida en una

---

[2] *Supra.*
[3] *Id.*

residencia ubicada en la urbanización Sans Souci, en el municipio de Bayamón. Explicó que, al llegar a la residencia, observó al señor Berríos Chévere confundido, triste y sollozo. Aclaró que en el lugar también se encontraba la hija y la compañera del perjudicado, pero no el apelante. Testificó que el perjudicado le expresó que llegó a la residencia junto a su hijo y que comenzaron a discutir debido a que este le pidió dinero y él se negó a dárselo, razón por la cual su hijo lo empujó contra la pared de la marquesina. Indicó que pudo percibir que el señor Berríos Chévere presentaba una marca visible en el área de la nariz o rostro y que se le veía la cara roja. Declaró que, durante el proceso de investigación, el apelante regresó a la casa, el agente lo entrevistó, le leyó las advertencias y lo colocó bajo custodia. Añadió que el apelante aparentaba estar bajo los efectos del alcohol, ya que no tenía mucha coordinación, tardaba en responder preguntas y estaba agresivo.

Culminado el juicio en su fondo, el 15 de abril de 2024, el Tribunal de Primera Instancia emitió *Sentencia*[4] mediante la cual encontró al señor Berríos Córdova culpable del delito de maltrato a personas de edad avanzada. Por consiguiente, le impuso una pena de siete años y seis meses de cárcel por infracción al Artículo 127-A del Código Penal de Puerto Rico, *supra*.

Inconforme con la determinación, el 15 de mayo de 2024, el apelante acudió ante esta *Curia* mediante *Apelación Criminal*.[5] Posteriormente, el 9 de mayo de 2025, la parte apelante instó una *Moción informando defecto sustancial del expediente de apelación y solicitud de relevo de representación*.[6] En síntesis, adujo que los autos elevados estaban incompletos ya que faltaban dos piezas de evidencia admitida, las cuales fueron desglosadas con posterioridad a la emisión del fallo condenatorio. A tenor, solicitó que se revocase la sentencia apelada y se ordenase la celebración de un nuevo juicio.

---

[4] *Supra*.
[5] *Id.*
[6] *Id.*

Tras varios incidentes procesales, el 27 de agosto de 2025, emitimos una *Resolución*[7] denegando la solicitud presentada por el apelante. Dado lo anterior, el 11 de septiembre de 2025, el apelante instó ante esta *Curia* una *Solicitud de Reconsideración Urgente*.[8] El 16 de septiembre de 2025, emitimos *Resolución*[9] declarado *Sin Lugar* la reconsideración solicitada.

Luego de varias incidencias procesales, el 7 de enero de 2026, el apelante compareció ante nos mediante *Moción de defecto sustancial del expediente de apelación que imposibilita la presentación de un alegato y la revisión apelativa*.[10] El 5 de febrero de 2026, notificamos una *Resolución*[11] donde le concedimos a la parte apelante hasta el 13 de febrero de 2026 para presentar su Alegato, y declaramos *No Ha Lugar* lo anteriormente solicitado.

Inconforme con lo resuelto por este foro revisor, el 12 de febrero de 2026, el apelante acudió ante nuestro Tribunal Supremo mediante *Petición de Certiorari* y *Solicitud de Paralización en Auxilio de Jurisdicción*.[12] En síntesis, expresó que este foro revisor incidió al denegar su solicitud, ya que existía un legajo incompleto en el expediente que debía corregirse, por lo cual, alegó que la determinación emitida violentó las normas de este Tribunal de Apelaciones, así como los derechos del acusado al debido proceso de ley en la etapa apelativa. En la misma fecha, el Tribunal Supremo emitió una *Resolución*[13] denegando la expedición del recurso de *certiorari*.

Resuelto lo anterior, el 12 de febrero de 2026, el apelante comparece ante nos mediante *Apelación Criminal*,[14] y esgrime la comisión de tres (3) errores por parte del foro primario, a saber:

> Primero: Cometió error el TPI cuando, luego de emitir fallo de culpabilidad, ordeno *motu proprio* el desglose

---

[7] *Id.*
[8] *Supra.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*

de toda la prueba documental provocando que el expediente de apelación quedara incompleto y que la abogada que suscribe no pudiese prepararse para presentar alegato a favor del apelante en violación al derecho del apelante al debido proceso de ley en esta etapa.

Segundo: Erró el TPI al admitir en evidencia ciertas declaraciones del apelante, a pesar de que en la tarjeta de advertencias Miranda, recibidas como prueba durante el juicio, el acusado indico claramente que ejercería su derecho a no incriminarse y que no iba a declarar. La admisión de esas declaraciones constituyo un error constitucional perjudicial al referirse al supuesto posible motivo para cometer el delito imputado y, además, ser utilizada por la fiscal durante sus informes finales.

Tercero: Erró el TPI al declarar culpable al apelante aun cuando la prueba no estableció su culpabilidad más allá de duda razonable, esto a la luz de las inconsistencias en el testimonio del alegado perjudicado, sus contradicciones con el testimonio del agente investigador, las omisiones en ambos testimonios, así como el que no se presentara prueba más firme y satisfactoria que pareciere tener la fiscal, en violación al derecho del acusado a la presunción de inocencia y al debido proceso de ley.

Posteriormente, el 16 de marzo de 2026, compareció el Ministerio Público mediante *Alegato del Pueblo de Puerto Rico*.[15] Con el beneficio de la comparecencia de las partes, procedemos a resolver.

II.

**Ley del caso**

En lo pertinente al caso de marras, es norma reiterada por nuestro Tribunal Supremo que, en nuestro ordenamiento jurídico, los derechos y las obligaciones que han sido objeto de adjudicación en el ámbito judicial mediante un dictamen final y firme constituyen la ley del caso. *Berkan et al. v. Mead Johnson Nutrition*, 204 DPR 183, 200 (2020); *Cacho Pérez v. Hatton Gotay y otros*, 195 DPR 1, 8 (2016); *Mgmt. Adm. Servs. Corp. v. E.L.A.*, 152 DPR 599, 606 (2000). Quiérase decir, para que adquiera carácter de ley del caso, la determinación tiene que constituir una decisión final en los méritos de la cuestión considerada y decidida. *Berkan et al. v. Mead Johnson Nutrition*, *supra*, a la pág. 201; *Cacho Pérez v. Hatton Gotay*

---

[15] *Supra.*

*y otros*, *supra*, a la pág. 9; *Félix v. Las Haciendas*, 165 DPR 832, 843 (2005).

La aludida doctrina aplica a las controversias adjudicadas, ya sea por los Tribunales de Primera Instancia como por tribunales apelativos. *Cacho Pérez v. Hatton Gotay y otros*, *supra*, a la pág. 9. Su propósito es que los tribunales se resistan a rexaminar asuntos ya considerados dentro de un mismo caso para velar por el trámite ordenado y expedito de los litigios, así como promover la estabilidad y certeza del derecho. *Berkan et al. v. Mead Johnson Nutrition*, *supra*, 200-201; *Mgmt. Adm. Servs. Corp. v. E.L.A.*, *supra*, a la pág. 608; *Núñez Borges v. Pauneto Rivera*, 130 DPR 749, 755 (1992). Igualmente, esta doctrina es "una manifestación necesaria y conveniente del principio reconocido de que las adjudicaciones deben tener fin". *Cacho Pérez v. Hatton Gotay y otros*, *supra*, a la pág. 10. Ahora bien, la doctrina de la ley del caso no es inflexible, si el tribunal entiende que su determinación previa era errónea o puede causar una grave injusticia, podría, en exceptuadas ocasiones, aplicar una norma de derecho distinta. *Berkan et al. v. Mead Johnson Nutrition*, *supra,* a la pág. 201; *Cacho Pérez v. Hatton Gotay y otros*, *supra*, a la pág. 9.

**Maltrato a personas de edad avanzada**

El 12 de agosto de 2014, se aprobó la Ley 138-2014 con el propósito de establecer "el deber del Estado de promulgar y adoptar las medidas necesarias para detener y erradicar el maltrato, así como la negligencia hacia las personas de edad avanzada", *Exposición de Motivos* de la Ley 138-2014. Dicho estatuto, enmendó varias disposiciones de la Carta de Derechos de las Personas de Edad Avanzada e incorporó ciertos artículos al Código Penal de Puerto Rico. Entre los aludidos artículos que incorporó está legislación se encuentra el Artículo 127-A del Código Penal, el cual lee como sigue:

> Artículo 127-A. — Maltrato a personas de edad avanzada.
>
> Toda persona que, cometa abuso físico, emocional, financiero, agresión, robo, apropiación ilegal, amenaza, fraude, o violación, contra una persona de

edad avanzada, causándole daño o exponiéndole al riesgo de sufrir daño a su salud, su bienestar, o sus bienes, será sancionada con pena de reclusión por un término fijo de diez (10) años. 33 LPRA sec. 5186a.

## **Apreciación de la Prueba**

En nuestro ordenamiento jurídico es norma reiterada que los jueces de instancia son quienes están en mejor posición de aquilatar la prueba que tuvieron ante sí por lo que, la apreciación que los jueces de instancia realizan de esta merece de nuestra parte, como tribunal revisor, gran respeto y deferencia. *Pérez Cruz v. Hosp. La Concepción*, 115 DPR 721, 728 (1984). Así, como norma general, en ausencia de error manifiesto, prejuicio, pasión o parcialidad, no intervendremos con las conclusiones de hechos o con la apreciación de la prueba que haya realizado el foro primario. *Id.,* a la pág. 728. Los tribunales apelativos debemos brindarle gran deferencia al juzgador de los hechos, pues es este quien se encuentra en mejor posición para evaluar la credibilidad de un testigo. Debido a que los foros apelativos contamos con récords mudos e inexpresivos, debemos respetar la adjudicación de credibilidad realizada por el juzgador primario de los hechos. *Trinidad v. Chade*, 153 DPR 280, 291 (2001).

No obstante, podremos intervenir con estas conclusiones cuando la apreciación de la prueba que realizó el tribunal de instancia no represente el balance más racional, justiciero y jurídico de la totalidad de la prueba. *Ortiz v. Cruz Pabón*, 103 DPR 939, 946 (1975). La intervención de un foro apelativo con la evaluación de la prueba testifical que haya realizado el foro primario procede en aquellos casos en que un análisis integral de dicha prueba ocasione, en el ánimo del foro apelativo, una insatisfacción o intranquilidad de conciencia tal que hiera el sentido básico de justicia. Así pues, la parte que cuestione una determinación de hechos realizada por el tribunal de instancia debe señalar el error manifiesto o fundamentar la existencia de pasión, prejuicio o parcialidad. *S.L.G. Rivera Carrasquillo v. A.A.A.*, 177 DPR 341, 356 (2009). Además, los señalamientos ante los tribunales apelativos tienen que estar sustentados con la prueba adecuada. Las meras alegaciones no son suficientes para mover nuestra facultad

modificadora. *Henríquez v. Consejo Educación Superior*, 120 DPR 194, 210 (1987). Por último, en lo que respecta a la prueba documental los tribunales apelativos estamos en igual posición que los foros de instancia; tenemos la facultad de adoptar nuestro propio criterio respecto a esta. *Albino v. Ángel Martínez, Inc.*, 171 DPR 457, 487 (2007).

III.

En el caso de título, la parte apelante nos solicita la revisión de un dictamen emitido por el foro primario y nos esgrime la comisión de tres (3) errores. Por la naturaleza de los errores, estos serán discutidos de manera individual. Veamos.

En *primer lugar*, nos plantea el apelante que erró el foro primario al desglosar la prueba documental desfilada en juicio provocando que el expediente apelativo quedara incompleto y que su representación legal no pudiera elaborar una postura adecuada. Es menester señalar que la controversia relacionada con el desglose de la prueba documental y su ausencia en el expediente apelativo ya fue atendida y adjudicada en dos ocasiones por este foro revisor mediante la *Resolución*[16] notificada el 27 de agosto de 2025 y la *Resolución*[17] notificada el 5 de febrero de 2026. Como es sabido, los derechos y las obligaciones que han sido objeto de adjudicación en el ámbito judicial mediante un dictamen final y firme constituyen la ley del caso. *Berkan et al. v. Mead Johnson Nutrition, supra.* El propósito de esta doctrina es que los tribunales se resistan a rexaminar asuntos ya considerados dentro de un mismo caso para velar por el trámite ordenado y expedito de los litigios, y promover la estabilidad y certeza del derecho. *Íd.* Por tanto, la determinación respecto al primer señalamiento de error constituye la ley del caso y no puede ser objeto de un nuevo examen judicial en esta etapa del proceso.

En *segundo lugar*, el apelante sostuvo que cometió un error el tribunal recurrido al admitir en evidencia ciertas declaraciones del apelante,

---

[16] *Supra.*
[17] *Id.*

tras impartirle las advertencias de ley y este ejercer su derecho a no auto incriminarse. Del testimonio prestado por el agente Salgado surge claramente que, luego de realizarle las advertencias Miranda al señor Berríos Córdova, fue el propio apelante quien comenzó a hacer expresiones de manera espontánea y voluntaria. Por consiguiente, las referidas declaraciones resultan admisibles, al no haberse obtenido mediante interrogatorio ni como consecuencia de conducta coercitiva por parte de los agentes del orden público. Ahora bien, aun si hubiese mediado algún error en la admisión realizada por el apelante, este no sería perjudicial, pues la prueba testimonial presentada por el Ministerio Público estableció de manera independiente y contundente la culpabilidad del apelante.

Según surge de los autos, la prueba presentada por el Ministerio Público demostró más allá de duda razonable que se configuraron todos los elementos del delito de maltrato a persona de edad avanzada, perpetrado por parte del apelante contra de su padre. En particular, el testimonio del propio perjudicado estableció que el apelante lo agredió físicamente luego de una discusión por dinero, provocándole una marca visible en el rostro. A su vez, el testimonio del agente Salgado corroboró lo relatado por el perjudicado, al describir el estado emocional en el que se encontraba la víctima y las marcas físicas que observó en su rostro durante la investigación. Tras aquilatar la credibilidad de los testigos, el foro primario concluyó correctamente que la prueba presentada derrotó la presunción de inocencia del apelante y acreditó todos los elementos del delito imputado, más allá de duda razonable. Dicha determinación merece gran deferencia por parte de este foro revisor. Por tanto, no tiene méritos la alegación del apelante.

Por *último*, el apelante ataca la apreciación de la prueba realizada por el foro primario y sostiene que erró el Tribunal de Primera Instancia al declararlo culpable, aun cuando la prueba presuntamente no estableció su culpabilidad más allá de duda razonable. Es norma conocida que en

ausencia de pasión, prejuicio, parcialidad o error manifiesto no intervendremos con la apreciación de la prueba que el tribunal de instancia tuvo a bien realizar. *Pérez Cruz v. Hosp. La Concepción*, *supra*. Dicho lo anterior, no surge del expediente ante nos elemento alguno que nos permita concluir que, en el presente caso, el Tribunal de Primera Instancia haya incurrido en pasión, prejuicio, parcialidad o error manifiesto al evaluar los testimonios de los testigos de cargo. Así, luego de un análisis de los testimonios desfilados, resolvemos que en el presente caso el foro primario no cometió el error señalado.

VI.

Por todo lo anterior, nos resulta forzoso **confirmar** la sentencia apelada.

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones